[Cite as *State v. Noling*, 2022-Ohio-759.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-P-0081 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the<br>Court of Common Pleas |
| TYRONE LEE NOLING, | |
| Defendant-Appellant. | Trial Court No. 1995 CR 00220 |

## O P I N I O N

Decided: March 14, 2022
Judgment: Reversed and remanded

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Brian Church Howe,* The Ohio Innocence Project, University of Cincinnati College of Law, P.O. Box 210040, Cincinnati, OH 45221; and *Carrie C. Mahan,* Weil, Gotshal & Manges LLP, 2001 M Street, N.W., Washington, DC 20036 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Tyrone Lee Noling, appeals from the July 9, 2021 judgment denying his Motion for Nondestructive Access to State Files. At issue is whether the trial court erred in denying appellant the opportunity to review the Portage County Prosecutor's file as well as the Portage County Sheriff's file relating to the criminal investigation which precipitated his indictment and his eventual conviction for, inter alia, aggravated capital murder. We conclude that, pursuant to this court's remand order set forth in *State v. Noling*, 11th Dist. Portage No. 2011-P-0018, 2014-Ohio-1339 ("*Noling IV*"), the trial court committed reversible error.

{¶2} On August 18, 1995, the Portage County Grand Jury indicted appellant for his involvement in the murders of Bearnhardt and Cora Hartig. The indictment charged appellant with two counts of aggravated murder, with each count including specifications of aggravating circumstances pursuant to R.C. 2929.04(A)(3) and 2929.04(A)(7). Appellant was additionally indicted on two counts of aggravated robbery and one count of aggravated burglary. All charges included a firearm specification alleging appellant possessed a firearm on or about his person or under his control while committing the offenses.

{¶3} After trial, the jury entered a verdict of guilty on all counts, including the charged specifications. The trial court then entered the penalty phase after which the jury returned a recommendation that the court impose the death penalty. The trial court independently concluded that the death penalty was warranted and entered the sentence on record. Appellant appealed his convictions to this court and, in *State v. Noling,* 11th Dist. Portage No. 96-P-126, 1999 WL 454476 (June 30, 1999) ("*Noling I*"), this court affirmed the trial court's judgment on conviction. The matter was subsequently appealed to the Supreme Court of Ohio, which affirmed appellant's conviction. *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044.

{¶4} In July 1997, appellant filed a petition for postconviction relief pursuant to R.C. 2953.23. The trial court, however, dismissed the petition, concluding there was no substantive grounds for relief. Appellant subsequently appealed the trial court's dismissal, and this court affirmed the trial court's judgment. *State v. Noling,* 11th Dist. Portage No. 98-P-0049, 2003-Ohio-5008 (*Noling II* ).

{¶5} Appellant later commenced a federal habeas corpus action. While the action was pending, the Cleveland Plain Dealer published an article premised upon appellant's case. The article's heading read: "Lies put man on death row, three claim Portage investigator used coaching, threats to get confessions, men say." The record indicates the Plain Dealer was able to obtain various pieces of evidence via a public-records request. Subsequent to the article's release, appellant filed, inter alia, a successive petition for postconviction relief and motion for new trial. Appellant asserted multiple grounds for relief in his successive petition and motion for new trial, all of which could be classified into one of three categories: (1) *Brady* evidence pertaining to alleged suppressed exculpatory material; (2) ineffective assistance of counsel relating to evidence that trial counsel possessed at trial but failed to utilize; and (3) evidence in the form of post-trial affidavit testimony. After considering the arguments, the trial court dismissed appellant's successive petition and motion for new trial finding the evidence failed to meet the standards for granting a new trial or successive petition for postconviction relief. Appellant then appealed the trial court's decision which this court affirmed. *State v. Noling,* 11th Dist. Portage No. 2007-P-0034, 2008-Ohio-2394 (*Noling III* ).

{¶6} During the pendency of *Noling III,* the Northern District issued a lengthy order denying appellant relief in habeas corpus. *Noling v. Bradshaw,* 2008 U.S. Dist. LEXIS 7650 (N.D.Ohio, Jan. 31, 2008).

{¶7} In June 2010, appellant filed a motion for leave to file a new trial motion in the Portage County Court of Common Pleas pursuant to Crim.R. 33(A)(6) and R.C. 2945.80. The motion was premised upon evidence, which appellant characterized as

3

newly discovered and materially exculpatory. The evidence included: (1) a statement from one Nathan Chesley, which inculpated Chesley's now-deceased foster brother, Dan Wilson, in the Hartig murders (Wilson was executed in 2009 for an unrelated 1991 aggravated murder conviction); (2) DNA evidence from a cigarette butt that was found in the Hartig's driveway during the murder investigation, which previously excluded appellant, but, appellant argued, did not similarly exclude Dan Wilson; and (3) statements made by one Marlene VanSteenberg, potentially implicating her brother-in-law, Raymond VanSteenberg, in the Hartig murders. The foregoing evidence was obtained through a public records request to the Portage County Sheriff's Office and, according to appellant, was neither in the prosecutor's "open file" nor otherwise disclosed to defense counsel.

{¶8} After holding an evidentiary hearing, the trial court denied appellant's motion. In its judgment, the trial court observed that, prior to appellant's trial, the state of Ohio had an open-file discovery policy. The court noted that appellant's defense counsel testified they had no recollection of the evidence submitted in support of appellant's motion for leave to file. The prosecuting attorney, however, testified he provided full discovery of everything in his possession. Given these points, the court determined that appellant failed to establish, by clear and convincing evidence, that he was unavoidably prevented from discovering the exculpatory evidence at issue. Appellant appealed the trial court's judgment to this court, and, in *Noling IV*, this court vacated the trial court's judgment and remanded the matter for further proceedings.

{¶9} When this court issued its March 2014 opinion in *Noling IV*, appellant had a motion pending in the trial court seeking a complete copy of DNA test results and, shortly thereafter, he filed an application for DNA testing. In June 2014, the trial court denied

4

these motions and appellant filed a notice of appeal with this court. This court dismissed the appeal for lack of subject-matter jurisdiction. *State v. Noling*, 11th Dist. Portage No. 2014-P-0045, 2015-Ohio-2454 ("*Noling V*"). This court determined that, pursuant to statute, the Supreme Court of Ohio has exclusive jurisdiction to review any denial of DNA testing for a defendant sentenced to death. *Id.* at ¶3, 15, citing R.C. 2953.73(E). Appellant appealed to the Supreme Court, where the case remained pending until May 2018. Ultimately, the Supreme Court affirmed the matter in part, reversed it in part, and remanded the case to the trial court for further proceedings vis-à-vis appellant's request for DNA profile(s).

{¶10} In February 2019, appellant filed a motion, supported by an expert affidavit, for funding to employ an expert document examiner to analyze the relevant files, pursuant to Crim.R. 42(E) (which allows the trial court to appoint experts for indigent defendants in capital cases and post-conviction review capital cases). The trial court granted the order. Although this judgment was ultimately sealed, appellant asserts the court represented such appointment was consistent with this court's remand order in *Noling IV*. Subsequently, in March 2019, the Supreme Court re-transmitted the case record to the trial court. Thereafter, appellant moved for access to the state's files, pursuant to Crim.R. 42(C).[1] The trial court denied the motion, concluding it was not "properly presented." Appellant filed a motion for reconsideration, requesting the court to reconcile its previous order granting funds for an expert document examiner pursuant to Crim.R. 42(E), while

---

1. That rule provides: "(C) Access File Material. In a capital case and post-conviction review of a capital case, the prosecuting attorney and the defense attorney shall, upon request, be given full and complete access to all documents, statements, writings, photographs, recordings, evidence, reports, or any other file material in possession of the state related to the case, provided materials not subject to disclosure pursuant to Crim.R 16(J) shall not be subject to disclosure under this rule."

5

denying access to the materials which appellant's expert would examine, mandated by Crim.R. 42(C). The trial court denied the motion without explanation.

{¶11} In October 2019, appellant filed a "Motion for Nondestructive Access to State Files," pursuant to this court's order in *Noling IV*. Apparently, the motion remained pending for nearly one year and a half. Accordingly, in April 2021, appellant filed a "Motion for Status Conference and/or Hearing on [his] Motion for Access." The state opposed the motion, claiming appellant's October 2019 motion was merely a reiteration of arguments asserted in his previously overruled motions. Finally, on July 9, 2021, the trial court denied each pending motion, offering only that they were "not well taken." Appellant now appeals that judgment and assigns the following as error:

{¶12} "The court of common pleas violated this court's 2014 mandate by denying appellant's Motion for Nondestructive Access to State Files given that this court required that 'further proceedings were necessary to determine whether [potentially exculpatory evidence] was part of the open file or otherwise available through the Sheriff's materials at the time of [appellant's] trial' and ordered that 'additional evidence must be taken.'"

{¶13} Appellant argues that the trial court's failure to grant him access to the state's files, held by both the Portage County Prosecutor as well as the Portage County Sheriff's Office, directly contradicts this court's remand order in *Noling IV*. He also persuasively points out that the trial court's conclusory judgment denying him access is fundamentally inconsistent with its prior judgment releasing funds for the appointment of a document-examination expert for purposes of reviewing the records. We agree with each contention.

Case No. 2021-P-0081

{¶14} To fully appreciate our position, an adumbration of this court's opinion and order in *Noling IV* will be assistive. In *Noling IV*, this court addressed whether the trial court abused its discretion in denying him leave to file a motion for new trial. In his motion for leave, appellant advanced evidence that the prosecution failed to disclose evidence that his trial counsel could have used to support an alternative-suspect defense. He claimed the prosecution withheld results from a blood-typing test of a cigarette butt found at the scene. According to a report, appellant claimed the genetic material found on the cigarette did not match appellant or his co-defendants, but did not exclude an alternative suspect, one Dan Wilson – an individual who was ultimately arrested for a separate murder and executed. Evidence indicated Wilson lived nearby the victims in the underlying matter. Further, appellant asserted the state failed to provide defense counsel with a statement made by Wilson's foster brother, Nathan Chesley, indicating Wilson committed the murders. Mr. Chesley later filed an affidavit describing Wilson as an aggressive person who was breaking into private homes in 1990; the murders in the underlying case were committed in April 1990. *Noling IV*, *supra*, at ¶28-29. Appellant claimed his defense team was never apprised of the foregoing evidence.

{¶15} Appellant also asserted the state withheld material evidence relating to another individual who, near the time of the murders, had engaged in suspicious activity with a .25 caliber handgun. The .25 caliber handgun used in the underlying murders was never recovered. Appellant claims the alleged alternative suspect, one Raymond VanSteenberg, was never identified by the state as a potential, alternative suspect. However, according to a statement issued by Mr. VanSteenberg's sister-in-law, Marlene VanSteenberg, he borrowed a .25 caliber gun belonging to her and her husband near the

7

time of the murders.  Ms. VanSteenberg apparently knew Mr. VanSteenberg owned a firearm;  when she asked him what happened to it, however, he stated he had to throw it out because he "just had to do it."  Additionally, shortly after the murders, Mr. VanSteenberg contacted Ms. VanSteenberg from the Portage County Sheriff's Office and explained he had submitted the firearm he borrowed to authorities.  He asked her to tell investigators he had the weapon in his possession for at least three to four months prior.  Ms. VanSteenberg declined.  Ultimately, the ballistics analysis established the firearm Mr. VanSteenberg turned in to authorities was not the murder weapon.   *Id.* at ¶31-37.

{¶16}  Appellant's trial attorneys testified they made the requisite pretrial discovery demands, including any information tending to show that other persons, excluding the accused, were involved in the crime.  *Id.* at ¶44.  They believed the prosecutor provided everything exculpatory relating to potential alternative suspects, but did not recall seeing or having an awareness of any of the alternative-suspect evidence set forth in appellant's Crim.R. 33 motion. *Noling IV*, *supra*, at ¶44-47. Moreover, because appellant's defense was actual innocence, they noted they would have seized on the evidence because identity of the murderer was the entire issue in the case.  *Id.* at ¶44.  Further, the attorneys asserted they thought the prosecutor's open file relating to appellant's prosecution provided everything, particularly documentary evidence, relating to appellant's case. They additionally believed all documentary evidence was disclosed in light of their discovery requests and, as a result, neither attorney believed any further inspection of documents would be necessary.  *Id.* at ¶50.  The evidence adduced at appellant's 2011 evidentiary hearing, however, revealed that, while the Sheriff *may have* kept one file for all investigative material in the underlying murders, the prosecutor kept separate files for

8

each co-defendant.[2]  *Id.* at ¶49, 52. Under the circumstances, this court determined that it was reasonably possible that the evidence advanced in support of appellant's motion for leave made it into the co-defendants' files at the prosecutor's office (or the Sheriff's office) but was never specifically transferred to appellant's file.  *Id.* at ¶51-52.

{¶17}  This court ultimately determined that "additional evidence must be taken to completely inform the [trial] court's decision on whether, as a matter of fact, the evidence at issue was or was not in the file received by or offered to defense counsel."  *Id.* at ¶59. In light of the evidence, this court held "further proceedings are necessary to determine whether the evidence at issue was part of the open file or otherwise available through the Sheriff's materials at the time of trial."  *Id.* at ¶60.  Despite various attempts by appellant to proceed with this order, outlined above, the trial court has declined.

{¶18}  Initially, we will address the state's argument that appellant's arguments on appeal are barred by res judicata.  The state claims that appellant's prior motions seeking access to the records at issue were overruled and he did not attempt to appeal those judgments.  The state contends appellant simply replicated his arguments in his most recent motion, and therefore, because the trial court rejected them, they are now barred. We do not agree.

{¶19}  "[A] convicted defendant is precluded under the doctrine of res judicata from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have  been raised" in the trial court or an appeal from a judgment.  *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), at paragraph one of the syllabus. Moreover, settled principles of res judicata or former

---

2. A prosecutor testifying at the hearing claimed the Sheriff kept one large file for Hartig murders, but the record suggests the Sheriff's file was organized according to each co-defendant.

adjudication preclude relief on successive motions raising issues which were or could have been originally raised in a prior pleading. See, *e.g.*, *State v. Hall*, 11th Dist. Trumbull No. 2010-T-0053, 2011-Ohio-656, ¶7

{¶20} There is no question appellant moved the court for access to the records twice previously; however, he premised his basis for relief in those motions upon Crim.R. 42(C). The most recent motion sought relief premised upon this court's remand order in *Noling IV.* Although appellant could have argued each basis for relief as conjunctive reasons for granting the prior motions, we decline to hold res judicata prevents consideration of his arguments on appeal.

{¶21} "'The doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time, but rather a rule of fundamental and substantial justice, or public policy and of private peace. The doctrine may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, *and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.*'" *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 386 (1995) (Emphasis sic.) (Douglas, J., dissenting), quoting 46 American Jurisprudence 2d (1994) 786- 787, Judgments, Section 522. "'Underlying all discussion of the problem must be the principle of fundamental fairness in the due process sense. It has accordingly been adjudged that the public policy underlying the principle of res judicata must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which to present his case. * * *[.]'" *Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St.3d

10

193, 202 (1983), quoting 46 American Jurisprudence 2d 569-570, Judgments, Section 402. It would be fundamentally wrong and unjust to apply res judicata in this situation.

{¶22} Initially, applying res judicata would permit the trial court to completely and unreasonably ignore this court's remand order in *Noling IV* simply because it had previously, albeit without clear justification or rationale, denied appellant's previous Crim.R. 42(C) motion for access. Coincidentally, it would appear Crim.R. 42(C) mandates the relief appellant sought in his initial motions. (In "post-conviction review of a capital case, the prosecuting attorney and the defense attorney *shall*, upon request, be given full and complete access to all documents * * * in possession of the state * * *." *Id.* (Emphasis added.)) Still, the court's decisions on the previous motions are not on appeal and thus not directly at issue in this appeal. In light of this court's remand order, which was first, formally raised as a basis for relief in the underlying motion and which the trial court has effectively ignored, we decline to give preclusive effect to the trial court's prior, under-analyzed judgments denying appellant's Crim.R. 42(C) requests.

{¶23} Moreover, the trial court granted appellant's motion to release funds for the appointment of a forensic document examiner, yet, for reasons unknown, denied, without substantive justification, the motion for access to the very documents the expert would be examining. Not only is this fundamentally inconsistent with this court's order in *Noling IV*, it is inherently contradictory. It is both strange and unintelligible why the trial court would release funds to appoint an expert who, by virtue of the court's subsequent orders, can never be utilized. The state does not dispute the expert's appointment and, in order to effectuate this court's prior remand order, appellant and his expert must be granted access to the files at issue.

11

Case No. 2021-P-0081

{¶24} Appellant's assignment of error has merit.

{¶25} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is reversed and remanded for further proceedings.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2021-P-0081